STATE, THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON, RELATORS, v. NATHAN BARNET, MAYOR, RESPONDENT.

1. Where a charter of a municipal corporation requires a proceeding to be instituted by an ordinance, it cannot be effected by a resolution merely, the latter being wanting in the solemnities of the former, and is not regarded as a legal equivalent.

2. The charter of the city of Paterson provides that any legislative act of the board of aldermen shall be by ordinance passed by a vote of a majority of its members, and in case an ordinance involves the expenditure of money, the votes of two-thirds of the members of the board shall be necessary to its passage. The board of aldermen, by resolution, directed the construction of certain sewers and drains, and passed an ordinance for the issue of bonds to pay for the same; the mayor of the city declined to sign the bonds thus ordered to be issued. *Held*,

1. That the act of the board of aldermen was legislative in its character, and could not be effected by resolution.

2. The mayor will not be compelled by *mandamus* to do an act against his objection in furtherance of a measure having its inception without legal authority and in violation of the charter provisions.

On rule to show cause for *mandamus*.

Argued at November Term, 1883, before Justices KNAPP, DIXON and MAGIE.

For the relator, *J. W. Griggs.*

For the respondent, *G. S. Hilton.*

The opinion of the court was delivered by

KNAPP, J. The board of aldermen of the city of Paterson, on the 17th day of September, 1883, passed an ordinance for the issue of city bonds not to exceed $40,000, to pay for certain sewers or drains then in process of construction, under resolution of the board of aldermen for that purpose. The ordinance provided for the terms of the bonds to be issued, and ordained that they should be signed by the mayor, sealed with the city seal, attested by the city clerk and countersigned by the comptroller, and, when executed, be sold by the department of finance for not less than par. The ordinance was duly presented to the mayor of the city, but was returned subsequently without his signature and with his objections.

On the 26th day of September, the board of aldermen, acting within their chartered powers, passed the ordinance, notwithstanding the veto. Bonds were prepared as directed by the ordinance, and on October 9th following were presented by the finance committee of said board for his signature in their execution. The mayor refused to sign them on the same grounds that his approval of the ordinance was withheld. This proceeding is to compel such signature if it be determined as necessary in the execution of such bonds, and if it be his legal duty to do so. That the act of signature required of the mayor is one which, in performance, will be purely ministerial, admits of no doubt. In passing upon the propriety of the ordinance, his capacity was a very different one—one in which his judgment and discretion were called in action; but when, against his opposing judgment,

the act of legislation received the approval of the board of aldermen, it acquired the same force as if the mayor's signature had been given.    And those objections, if legally overcome by passage of the ordinance over his veto, cannot now be interposed against the performance of a mere ministerial act made necessary by it.    His objections there concerned the policy of their issue.    *Ahrens* v. *Fiedler*, 14 *Vroom* 400.

The mayor denies the duty upon him to sign bonds if ministerial only, alleging that there is no express provision in the section of the charter (*Pamph. L.* 1871, *p.* 118,) relating to the issue of such bonds, which requires the mayor's signature in their execution, or that there is elsewhere, in legislation governing the city, such express direction respecting the execution of such municipal contracts or any ordinance of the city providing for such general duty.    And it is urged that, therefore, this ordinance being for a special issue of bonds as its principal object, is not appropriate or adequate to impose duties on him in respect to such contracts.

The charter provides that every legislative act of the board of aldermen shall be by ordinance.    *Charter* 1871, § 24.    The twenty-sixth section of the same act confers on that board power to " make, continue, modify and repeal such ordinances, &c., as may be necessary to carry into effect any and all the powers vested by law in the corporation."    Amongst these powers is found in the one hundred and eighteenth section that of issuing sewer bonds.    Under this legislation an ordinance providing in proper cases for their issue, and prescribing for the manner of their execution, was legal and necessary, and the propriety of such a provision is not questioned.    Certain I think it is that, under this ordinance, bonds could not be issued varying from its prescribed terms, either in matter of substance or in the mode of execution; and, however clear the authority may be in the board to authorize the issue of bonds, they cannot, under the form in which power is ordained to be carried out, be effective without such signature of the mayor, and if the issue is otherwise legal, it seems to me to be made as much a part of his duty to

give his name in their authentication as it is that of the clerk to affix the corporate seal of the city. An ordinance passed under express legislative authority, or inherent right of the corporation, is as much a law of the corporation as the charter creating it. But I think also that the provision in the twenty-ninth section of the charter, expressly requiring the mayor " to perform such duties as may be prescribed for him by the city ordinances," is directly applicable to an ordinance of this nature. The position that an ordinance defining his duties must be a continuing one, and such as prescribes all his duties touching all subjects, is based upon the legal characteristic of generality ascribed to ordinances or by-laws. Under this and many other charters of the state, all acts for the expenditure of money in considerable amount for specified objects are required to be in the solemn form of ordinance. To pave, fill or excavate a street, or build a sewer, and many other authorized acts exceeding a specified amount, must be determined upon in the deliberate form of town law, and such ordinances are general in the sense that they are binding upon the members of the corporation having any relation to the subject for which they provide, and not objectionable unless they discriminate without reason between individuals affected. *Dill. on Mun. Corp.*, § 256 *and note.*

If these were the only objections urged, I think it would be the duty of the mayor to sign them, and against his refusal *mandamus* becomes the proper mode of relief.

But the respondent denies the city's right to issue these bonds for the purposes contemplated in the ordinance, because the determination to build the sewers which the bonds are designed to pay for was expressed in form of a resolution by the board of aldermen, and not by the adoption of an ordinance for that purpose, and therefore claims that the work is being done without proper observance of the requirements of the charter and consequently illegal, and that the bonds are to pay for such illegal enterprise.

The charter of 1871, section 24, provides that every legislative act of the board of aldermen shall be by ordinance

passed by a vote of the majority of its members, and in case any ordinance involves the expenditure of money, the votes of two-thirds of the members of said board shall be necessary to its passage.

In *State* v. *Newark*, 1 *Dutcher* 399, 427, distinction was drawn between such acts of a municipal corporation as were legislative in their character and such as are judicial, and it was there declared that resolutions ordering improvements to be made in the city, (in that case a sewer,) were legislative acts, and such, I think, is the character generally assigned to them. *People* v. *New York*, 5 *Barb.* 45; *Howeth* v. *Jersey City*, 1 *Vroom* 93; *Haight* v. *Love*, 15 *Vroom* 20; *Mabon* v. *Halsted, Director*, 10 *Vroom* 640.

The legislature, in which the general power over this subject rests, has committed this branch of its power to be exercised by the local government. Without such delegation of power the legislature alone could exercise it. It is well settled that when the law requires a proceeding to be instituted by an ordinance it cannot be effected by resolution merely. The latter, wanting the solemnities of the former, is not regarded as a legal equivalent. *State, Story, pros.*, v. *Bayonne*, 6 *Vroom* 335; *State* v. *City of Paterson*, 16 *Vroom* 267. And in these and other instances in this court, proceedings instituted in disregard of such requirements have been held illegal when brought up for review upon reasoning which need not here be repeated.

These bonds are sought to be issued, and the respondent's signature required in their execution, to carry on, with the proceeds of their sale, an improvement so illegally begun, and therefore by this method illegally to be continued. The question, then, in this branch of the case is, Shall the mayor be compelled by the court to do an act, against his objection, in furtherance of a measure having its inception without legal authority and in violation of the charter provisions? The case of *State, ex rel. Nicolson Pavement Co.*, v. *Newark*, 6 *Vroom* 396, is a decision against it, and I see no reason for questioning the correctness of the principle upon which that

case was decided. There it was sought to compel the mayor of the city, by *mandamus*, to sign a contract which had been made in disregard of the provisions of the charter of the city and its ordinances, and the writ was refused. That the objection here made arises in a later stage of progress of the unauthorized transactions seems to me in no wise to affect the principle. The mayor is now for the first time called upon to do an act in recognition of the validity of this corporate action, and first given an opportunity to object. With respect to the suggestion that the contractor is entitled to be paid for his work and the bonds are required for his payment, it is neither necessary in the case nor proper between the present parties, to decide or consider how far the contractor will be affected by the mode in which this public work was initiated. His rights can be passed upon only when he is in court to litigate them. The respondent successfully resists this application when he is able to throw doubt upon the right of the city to compel what it asks of him, or his duty to yield it on the relator's demands. There is, at the least, such doubt of the contractor's right on the case, as it stands before us, that were he here seeking to compel by *mandamus* the signing of a warrant upon the city treasury to pay him for his work, it must be refused, and he left to his ordinary legal redress.

The *mandamus* asked for should be denied.